Robert McFarland, Special Judge,
delivered the opinion of the Court.
The complainant alleges that her husband, Elijah J. Walker, died about February, 1864, seized and possessed of an undivided moiety in two tracts of land in Knox County, described in the bill, the defendant, *572 Thomas J. Walker, being the owner of the other half; that said Elijah J., died without issue, leaving his brothers and sisters, the said Thomas J. and the other defendants, his heirs at law. The complainant prays that dower be assigned her out of said lands. As evidence of her husband’s title, she refers to two deeds on the Register's books, of Knox County, from Wilburn W. Walker to said Thomas J. and E. J. Walker, dated the 1st October, 1859. The answers of Thomas J. and Reuben R. Walker, another brother, assert that the lands belong to them, the said Thomas J. and Reuben R. Walker; that the original deeds from Wilburn W. Walker, referred to in the bill, were made to them, and not to Thomas J. and E. J. Walker, as charged in the bill. The said Thomas J. files with his answer, copies from said original deeds, and says that the originals themselves will be shown to the court, if need be. The answers of the other defendants say that the lands belong to said Thomas J. and Reuben R. Walker, and disclaim any interest therein as the heirs at law, of E. J. Walker, deceased.
The copies of the deeds filed with the answer of the defendants, show the deeds to be from Wilburn W. Walker to Thomas J. and Reuben R. Walker. The copies from the Register’s books, show the deeds to be from Wilburn W. Walker to “Thomas J. and E. J. Walker';” that is, the copy of the deed for 157 acres is to Thomas J. and E. J. Walker, throughout the deed. In the copy of the other deed, in the first part, it is stated to be an indenture between Wilburn W. Walker, of the one part, and Thomas J. and Reu *573 ben R. Walker, of tbe other part; bnt in the conveying part, it is from Wilburn W. Walker to Thomas J. and E. J. Walker. The copies do not, in other respects, materially differ.
The complainant procured an order to be made upon the defendants to file the original deeds, and they were accordingly filed. They appear to be deeds from W. W. Walker to Thos. J. and “Reuben R. Walker,” but they bear upon their face unmistakable evidences of alteration. The rule is familiar, that a party introducing a deed, bearing upon its face evidence of alteration, must explain the alteration, or the deed will be rejected. The copies introduced by the complainant, as well as those introduced by the defendant, are but secondary evidence, and cannot be read as the evidence of the title, except in the absence of the originals. The original deeds are not supposed to be in the possession of the complainant; and the certified copies from the Register’s books would, in the absence of the originals, be sufficient for her purpose, but when the originals are produced, they are the higher evidence. In this case, the originals bear upon their face, evidences of alteration, and must be rejected until explained. However, both parties predicate their rights upon the same deeds; and the question is, to whom were the deeds actually executed, to Reuben R. Walker, or to E. J. Walker? And for the purpose of ascertaining how this fact is, both the originals and the copies, may be looked to. It is argued that the bill is not properly framed for the purpose of obtaining the relief sought; that the bill should have been for the purpose of reforming *574 the deeds. We think, that for the purpose of asserting complainant’s right to dower, the bill makes the proper issue: that is to say, did Elijah J. Walker die seized and possessed of an undivided moiety in those lands? The complainant is not supposed to be in possession of the original deeds, or to know that they had been altered; the bill does not so state; the deeds are the evidences of the title, and go to the heirs; and they would be the proper parties to seek relief of that character.
Did Elijah J. Walker die seized and possessed of an interest in these lands? If so, it is conceded that he acquired the title under the deeds referred to. To whom were these deeds executed? To Thomas J. and Reuben R. Walker, or to Thomas J. and E. J. Walker? It is very manifest that these deeds were originally written to Thomas J. and Reuben R. Walker. And it is further manifest, that, at some time, either before, -or at the time of their execution, or afterwards, the deeds were altered, in the one for 157 acres, by drawing parallel lines across the words, “Reuben R.,” or as it is written in one place, “Reuben W.,” wherever the name occurs in the deed, and interlining letters above, one letter above and between “Reuben” and “R,” and the other, above and between “R” and “Walker.” The other deed was altered in the same manner, except that the alteration occurred in but one part of the deed, and that is the conveying part.
It is argued for the complainant, that the letters thus interlined were the initial letters, “E. J.,” so as to make the deed read to “Thomas J. and E. J. *575 Walker,” in tbe place of “Thomas J. and Reuben R. Walker,” as originally written; and that this alteration occurred before the execution of the deeds.
It is further apparent, that these deeds were again altered, by an attempt to remove the letters that had been interlined, and also removing, as far as possible, the parallel lines that had been drawn across the “Reuben R.,” so as to restore the deeds to the form in which they were originally written; that this second alteration, or removing of the first alteration, was effected by “scraping” the paper with some sharp instrument, so as to remove, as far as possible, the letters that had been interlined, and all evidences of the first change.
The deeds were acknowledged and registered the 20th of April, 1861. One proposition is self-evident: The deeds were either falsely registered, or the copies made upon the Register’s books show how they stood at the time they were registered. The Register being a sworn officer, in the absence of any proof to the contrary, we must presume that he discharged his duty faithfully, and registered the deeds correctly.
The certificate of the County Court Clerk being also the act of a sworn officer, will be taken as true, in the absence of proof to the contrary.
The registration of these deeds then, establishes, that, at that time, they were deeds to “Thomas J. and E. J. Walker;” and from this it necessarily results, that this second alteration, by which the first change was removed or obliterated, occurred after the registration of the deeds.
The registration of the deeds also shows the nature *576 of the first change — that is, that the letters, that were interlined were “E. J.,” and in fact, traces of these letters can be seen in the original deeds.
When did this first alteration occur? Before, or at the time of the execution of the deeds, or afterwards? Were these alterations fraudulent?
It is in proof that at the time these lands were purchased, E. J. Walker was not in the country, and knew nothing of it; that the purchase was first negotiated for the benefit of Thomas J. and Reuben R., and in fact, the negotiations were probably first commenced by Reuben R.; but we think, that, in reality, Elijah Walker, Sr., the father of the parties, consummated the purchase, and paid at least a large part of the price; he was active in the negotiations; was present when the deeds were executed; went with the maker of the deeds to the Clerk’s office to have them acknowledged and registered.
The proof shows that there was some money paid in hand; by whom, is not clear. $2,500 of the price was paid by Elijah Walker, Sr., conveying to W. W. Walker, a house and lot in Knoxville. It is proven by Elijah Walker, Sr., and others, that this house and lot belonged to Thos. J. and Reuben R. Walker; but he admits that he. held in the title bond in his possession; procured the deed for it to be written; that it was written to himself; and that it was executed to him without alteration, he telling his sons it would make no difference. From this, we think that their claim to it was merely by his permission. The balance of the price was secured by two notes, one of which *577 was transferred to Crozier, and paid by Thos. J. Walker; and W. W. Walker, the holder of the other, thinks it was paid by Reuben R. Walker, in Confederate money. On the other hand," although E. J. Walker was not in the country at the time of the execution of the deeds, it is in proof that he was expected home at the time, and did return very soon after. He married in December, 1860, and soon after moved upon this land. Thos. J. also married and moved upon the land; and from that time until the death of Elijah J. Walker, they lived in the same house, and held and cultivated the lands in partnership. The testimony of Elijah Walker, Sr., and others of his family, prove that Elijah J. Walker’s possession and occupation of the land, was by the consent and permission of Reuben R. Walker, who was the real owner, and that Elijah J. never set up any claim to the land; but the great weight of all the other evidence, is, that Elijah J. Walker held and claimed this land as his own, paid taxes upon it, and in all other respects exercised acts of ownership; and that Reuben R., in reality, during that time, set up no claim to it whatever, and on several occasions distinctly admitted that Elijah J. and Thos. J. were the owners' of the land; that they had bought and paid, or nearly paid for it, and that he had no title or claim to it. These statements were so often made, and so distinct and unequivocal in their character, that we cannot but regard them as very strong evidence that he was setting up no title to the land, and that he recognized Elijah J. as the owner of that part now in controversy.
The evidence in regard to the fact of the execution *578 of tbe deed is in conflict. The two subscribing witnesses are, J. H. "Walker and W. E. Kay. Kay proves that the deeds were executed to Thomas J. and E. J. "Walker; that he was present and' heard them read; that he is certain as to one, and he thinks the other was also. The other subscribing witness, J. H, Walker, father of the parties, Elijah Walker, Sr., K. W. Walker, another brother, and W. W. Walker, the maker of the deed, all swear that the deeds were executed to Thos. J. and Keuben K. Walker. One Story also swears to the same fact, but it is evident that he got his impression from the parties at another time. This controversy necessarily involves serious suspicions against one or the other of the parties; and the testimony of near relatives must be taken with due allowance.
How is this question? Of the witnesses present at the time of the execution of the deeds, the largest number favor the defendant’s view of the case; but there are other facts that bear strongly upon the question.
This first alteration of the deeds, by which they were changed from “Keuben K.” to “E. J.” Walker, was executed in a careless manner, not indicating the purpose of forgery. Parallel lines were drawn across the words “Keuben K.,” leaving the words plainly visible, .and the letters are interlined above. No effort seems to have been made to conceal the change thereby effected. Had this - alteration been a fraudulent one, it would, ordinarily at least, have been accomplished with more care, and by removing the words “Keuben K.” and inserting the letters “E. J.” in their place, so as to conceal, as far as possible, the fact that such change *579 had been made. Again, as we have seen, the deeds, at the time of their registration, were to Thomas J. and E. J. Walker, so that the first change occurred previous to that time.
There is no proof that Elijah Walker ever saw, or had possession of the deeds previous to that time. But by far the strongest fact against the defendants, Thos. J. and Reuben R., is this: When they filed their answers, they had these original deeds in their possession. That those had been altered, is- a fact now conceded on a-11 sides; it is apparent from the deeds themselves. The bill, however, made no allusion to the fact. It was not probably known to the complainant; and these defendants, instead of filing the deeds with their answers, file copies; and in their answers, make no allusion whatever, to the fact that the deeds had been altered, or that they exhibited upon their faces any evidences of obliteration; and they only produce and file these original deeds, when ordered to do so by the Court.
We cannot suppose • that the fact of the alteration was unknown to them. The deeds themselves show the fact. The bill gave them notice how the deeds appeared on the Register’s books. This must, of necessity, have called their special attention to the deeds. And when we remember that they put themselves to the trouble of making copies and retaining the originals in their possession, we cannot doubt that they did know the fact. What are we to conclude, then, from this attempt of the defendants to conceal this fact from the Court? When they received these deeds into their possession from the Register’s office, they were either in the form in which *580 they were registered, or in their present obliterated condition. Differing from the Register’s books, in either case, they should at once have disclosed the facts, filed the deeds, and given such explanation of the facts as were within their knowledge. And in connection with this, it is to be observed, that this second alteration of the deed has been executed with evident care and purpose to conceal the fact of alteration. The letters that had been interlined were removed, as far as possible, by carefully scraping the paper, and the lines that had been drawn across the words Reuben R., removed, as far as possible, in the same way. These facts tend very strongly to the conclusion, that this latter alteration of the deeds was fraudulent; and from this it would almost necessarily follow, that the first was not.
It is in proof, that the deeds were written by W. W. Walker, at his house in the suburbs of Knoxville; that they were executed some days after, at the business house of Walker, O’Keefe & Co., in the City op Knoxville. The facts and circumstances satisfy us, that the first negotiation for the purchase, was made for the benefit of Thomas J. and Reuben R. Walker, but by a subsequent arrangement between the parties, E. J. Walker was substituted to the place of Reuben R. in the transaction, and that accordingly the first alteration spoken of, was made in the deeds; that this change was made at or before the execution of the deeds, and that they were executed as proved by Ray. This change was probably effected by the agency of Elijah Walker, Sr,; and the part of the purchase price of the property paid by him, was intended as an advancement *581 to bis sons, Thomas J. and Elijah. The amount of his property and his subsequent dispositions of it, strengthen this view. The fact that these changes in the transactions occurred, may, to some extent, account for the conflict in the testimony.
We are, therefore, of the opinion, that Elijah J. Walker died seized and possessed of an undivided moiety in these lands, and that the complainant is entitled to dower. As to the manner of assigning this dower, however, we think the decree is not correct. The lands must first be partitioned, and out of one-half, the dower of complainant assigned. The disclaimer of the heirs cannot affect the complainant’s rights; but the effect of the disclaimer, as between them and Reuben R. Walker, need not be considered.
The complainant is also entitled to an account of the rents during the time her dower has been wrongfully withheld: London vs. London, 1 Humph., 1.
The bill also prays an account against Thomas J. Walker, of a partnership alleged to have existed between him and said Elijah J., in farming and raising stock. We think this partnership is satisfactorily established. It' has been substantially settled, however, between said Thos. J. and the complainant, as administratrix, except as to the crop of 1864, and some small claims upon the Government. The said Elijah J., died in February, 1864. The wheat and some oats had been sown. The parties, without any special agreement, remained together, and with the joint stock and provisions on hand, made the crop for that year before any settlement or division v of the assets was made. Upon this, we think the part *582 nership is to be considered as including that year’s crop; and the decree as to that account, will be affirmed.
The cause will be remanded, for the purpose of taking the account and assigning the dower. The costs of this Court to be paid by the defendants, Thomas J. and R. it. Walker.